[Cite as *State v. Moten*, 2012-Ohio-6046.]

IN THE COURT OF APPEALS OF GREENE COUNTY, OHIO

STATE OF OHIO                          :

     Plaintiff-Appellee          :          C.A. CASE NO. 2011 CA 37

vs.                                    :          T.C. CASE NO. 2009 CR 818

LAWRENCE P. MOTEN                      :          (Appeal from Common Pleas
                                                    Court - Criminal Division)
     Defendant-Appellant         :

· · · · · · · · ·

**O P I N I O N**

Rendered on the 21st day of December, 2012.

· · · · · · · · ·

Stephen K. Haller, Prosecuting Attorney, by Nathaniel R. Luken, Assistant Prosecuting Attorney, Atty. Reg. No. 0087864, 61 Greene Street, Xenia, Ohio 45385
     Attorney for Plaintiff-Appellee

Anthony R. Cicero, Atty. Reg. No. 0065408, 500 East Fifth Street, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

· · · · · · · · ·

GRADY, P.J.:

{¶ 1}  Defendant Lawrence Moten appeals from his conviction and sentence for aggravated robbery, R.C. 2911.01(A)(1), and kidnaping, R.C. 2905.01(A)(2), both felonies of the first degree.

{¶ 2}  Early on the morning of December 11, 2009, Xenia Police Officer Roop was dispatched to the Regency Inn Motel on a report of an armed robbery.  The night desk clerk, James Furnas, told the officer that a man came in, pointed a gun at him, and demanded money, which Furnas gave him.  The robber then forced Furnas into a bathroom and tied his

hands together. The robber also took Furnas's watch. After the robber left the motel, Furnas freed himself and called the police.

{¶ 3} Furnas described the robber as a young, clean-shaven, medium to dark complected black man, about five feet eight inches tall. The robber wore a dark, hooded jacket, with the hood up, but no mask. At trial, Furnas identified Defendant Moten as the man who robbed him.

{¶ 4} Shortly before the robbery, Officer Sanso was parked in a school parking lot. A white Impala pulled in, but promptly left when its driver saw the officer's police cruiser. Officer Sanso followed the car to a parking lot near the Regency Inn. There were two occupants. The passenger got out and walked toward the motel. He was wearing a grey hooded sweatshirt. When the driver pulled out of the lot, Officer Sanso followed him until he pulled into a fast food restaurant.

{¶ 5} Minutes later, Officer Sanso heard the broadcast regarding the robbery. He gave his fellow officers information about the white Impala, suspecting that it may have been involved in the robbery. Officer Sanso soon found the car and, after seeing it cross over the marked line onto the shoulder of the road, decided to conduct a traffic stop. The car was driven by Clayton Brady, who had an open bottle of liquor in the car with him. Officer Sanso arrested Brady and called for back up. Sergeant Stutes responded. A handgun was found on the floor of Brady's car.

{¶ 6} Shortly after the robbery, Xenia police received a call from Eli McDufford, who lived near the Regency Inn Motel. McDufford stated that a black man wearing dark clothing and carrying a handgun had forced his way into McDufford's apartment. McDufford fought the man, disarming him, and the man left. When Officer Stott arrived at the

apartment, McDufford gave him the gun he took from the man. Officer Stott secured the loaded gun in his cruiser and told McDufford that an officer would return to talk to him further.

{¶ 7} Shortly after Officer Stott left, McDufford found a cell phone on his floor, near where the altercation had occurred. McDufford assumed that the phone belonged to the man who had forced his way into the apartment. When Detective Barlow arrived at McDufford's apartment a couple of hours later, McDufford gave the phone to the detective.

{¶ 8} Detective Clay interrogated Brady several hours after the robbery. Brady admitted that he was to have been the getaway driver for Defendant after he robbed the motel. Brady dropped Defendant off at the motel, but was stopped by police before he could return to pick Defendant up. Brady identified the coat worn by the robber on the surveillance tape as being the same as the one worn by Defendant when Brady dropped him off at the motel. Brady also identified the cell phone found at McDufford's apartment as belonging to Defendant. In exchange for Brady's trial testimony, the State reduced the charges against him and agreed not to oppose any motion he might file for judicial release.

{¶ 9} Detective Clay looked at the call log and photographs on the cell phone and determined the number assigned to the phone. She then subpoenaed the phone records and learned that the phone belonged to Defendant, who had not reported it missing. As a result of Detective Clay's prior contact with Defendant and her interrogation of Brady, she was able to identify Defendant as the robber from the videotaped surveillance of the motel.

{¶ 10} Carol Spradlin, the manager of the Harmony Motel in Springfield, saw Defendant's photo on the news on the night of the robbery. She recognized him as one of the

men staying at the motel, but under a different name. The man had been staying in there for about ten days, along with another male who drove a white Impala. Spradlin went to Defendant's room, where Defendant confirmed that he was the person whose photo was shown on the news broadcast. Within a couple of hours, Defendant checked out of the motel, telling Spradlin that he was going to take a bus to New York, where he had family. Spradlin called the police the next day.

{¶ 11} Defendant was indicted on one count each of aggravated robbery, kidnaping, and aggravated burglary; each charge carried a firearm specification. Defendant was arrested in New York and extradited to Ohio. Defendant filed a motion to suppress, which the trial court overruled. The case proceeded to trial. The trial court dismissed the aggravated burglary charge at the close of the State's case. The jury found Defendant guilty of the aggravated robbery and kidnaping charges and specifications. The trial court merged the two counts and sentenced Defendant to thirteen years in prison.

{¶ 12} Defendant appeals, raising five assignments of error.

{¶ 13} Defendant's First Assignment of Error:

"THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION TO SUPPRESS THE INFORMATION GAINED FROM THE CELL PHONE WITHOUT A WARRANT, WHICH VIOLATED HIS RIGHTS GUARANTEED BY THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION FOURTEEN OF THE CONSTITUTION OF OHIO."

{¶ 14} When considering a motion to suppress, the trial court assumes the role of the trier of facts and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses. *State v. Roberts,* 110 Ohio St.3d 71, 2006-Ohio-3665, 850 N.E.2d 1168. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Accepting those facts as true, the appellate court must then independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. *Id.*

{¶ 15} Defendant argues that cell phones are entitled to Fourth Amendment protection when they come into the custody of the police. In support, he relies on *State v. Smith,* 124 Ohio St.3d 163, 2009-Ohio-6426, 920 N.E.2d 949, wherein the Ohio Supreme Court held in its Syllabus that "[t]he warrantless search of data within a cell phone seized incident to a lawful arrest is prohibited by the Fourth Amendment when the search is unnecessary for the safety of law-enforcement officers and there are no exigent circumstances."

{¶ 16} However, in the present case, we are not faced with a cell phone that was searched after it was seized in a warrantless search. Instead, Defendant's phone records were searched after he voluntarily abandoned it. "'A defendant has no standing under the Fourth Amendment to the United States Constitution to object to a search and seizure of property that he has voluntarily abandoned.'" *State v. Dennis,* 182 Ohio App.3d 674, 2009-Ohio-2173, 914 N.E.2d 1071, at ¶ 38-39, 41 (2d Dist.), quoting *State v. Freeman,* 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph two of the Syllabus.

{¶ 17} In *State v. Dailey,* 3d Dist. Logan App. No. 8-10-01, 2010-Ohio-4816, the Third District Court of Appeals considered the constitutionality of a police search of data from a cell phone the defendant abandoned when a security guard attempted to stop him following a suspected incident of shop lifting. The Court held that "voluntary abandonment is a prime example of when a warrantless search of a cell phone may be conducted since it is clear that a defendant lacks standing to object to a search and seizure of property that he has voluntarily abandoned." *Id.* at ¶ 21.

{¶ 18} Similarly, Defendant voluntarily abandoned his phone at McDufford's apartment. He left both the phone and the gun behind when he left the apartment. Moreover, he made no attempts to recover the phone, or to even report the phone as missing. Because Defendant voluntarily abandoned his cell phone, he lacked standing to challenge the search of that phone.

{¶ 19} Defendant's first assignment of error is overruled.

{¶ 20} Defendant's Second Assignment of Error:

"THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED WHEN IT ADMITTED HEARSAY WITHIN HEARSAY FROM DETECTIVE CLAY WHEN SHE TESTIFIED ABOUT DOCUMENTARY EVIDENCE ALLEGEDLY DISCOVERED AT THE HARMONY MOTEL, WHICH WAS IN VIOLATION OF APPELLANT'S RIGHTS GUARANTEED BY THE DUE PROCESS CLAUSES OF [THE] FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS TEN AND FOURTEEN OF THE CONSTITUTION OF OHIO."

{¶ 21} The admission or exclusion of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). An "[a]buse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 22} Defendant argues that the trial court abused its discretion in allowing Detective Clay to offer hearsay evidence in violation of Evid.R. 801(C), when she testified that Defendant's name was on several documents recovered from the room he had vacated in the Harmony Motel. "'Hearsay' is a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

{¶ 23} Detective Clay's testimony was not "hearsay within hearsay," which is hearsay testimony which embraces other hearsay. Detective Clay's testimony concerning the fact that she discovered the documents and what they contained was based on her own personal knowledge concerning those matters, not what another declarant told her. Therefore, the officer's testimony was not hearsay. The issue is whether the declarations the documents contained is hearsay, when offered through the testimony of Detective Clay.

{¶ 24} Although excluding the documents themselves, the trial court did permit Detective Clay's testimony that the documents contained Defendant's name. In reaching this decision, the trial court relied on *State v. Dawson,* 10th Dist. Franklin No. 97AP10-1300,

1998 WL 481065 (Aug. 13, 1998), wherein the Court held that a police officer's testimony concerning names and addresses contained in documents and where those documents were found is not hearsay when offered to connect the defendants to each other and/or to a certain location, because it is not offered for the truth of the matter asserted.

{¶ 25} In cases in which words have independent legal consequences, the words are relevant without regard to their truth as evidence of "operative facts," and are therefore not hearsay. *Weissenberger*, Ohio Evidence Treatise, § 801.8 (2011 Ed.). In *Dawson*, the fact that the defendant's name was on documents found in a particular location was an operative fact that connected the defendant to that location. Likewise, in the present case, the fact that Defendant's name was on documents found in a motel room linked him with that location, and were admissible for that purpose. The significance of that evidence is that it connected him with Clayton Brady, the admitted driver of their getaway car. The documents were not offered to prove the truth of any declaration they contained.

{¶ 26} Defendant's second assignment of error is overruled.

{¶ 27} Defendant's Third Assignment of Error:

"THE VERDICT SHOULD BE REVERSED BECAUSE THE TRIAL COURT ERRED WHEN IT FAILED TO DISMISS COUNT I, AGGRAVATED ROBBERY, WHEN THE EVIDENCE AT TRIAL WAS DIFFERENT THAN THE BILL OF PARTICULARS, WHICH WAS IN VIOLATION OF APPELLANT'S RIGHTS GUARANTEED BY THE DUE PROCESS CLAUSES OF [THE] FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTIONS TEN AND FOURTEEN OF THE CONSTITUTION OF OHIO."

{¶ 28} Defendant argues that the trial court should have dismissed the aggravated robbery charge because the State's evidence at trial did not support the State's allegation in its bill of particulars that Defendant stole Furnas's wallet.   We note that Defendant did not raise this issue in the trial court, thereby waiving all but plain error.  *State v. Wickline,* 50 Ohio St.3d 114, 552 N.E.2d 913 (1990).   Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise.  *State v. Long,* 53 Ohio St.2d 91, 372 N.E.2d 804 (1978).

{¶ 29} Crim.R. 33(E) states:

No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court because of * * * (2) A variance between the allegations and the proof thereof, unless the defendant is misled or prejudiced thereby.

{¶ 30} Crim.R. 33(E)(2) is consistent with R.C. 2941.26, which provides that a variance between an indictment and the evidence offered in proof thereof "in the name or description of a matter or thing therein named or described" is not a ground for acquittal unless the court finds "that such variance is material to the merits of the case or may be prejudicial to the defendant."

{¶ 31} Defendant relies on *State v. Lewis,* 21 Ohio St.2d 203, 257 N.E.2d 59 (1970). In *Lewis*, the defendant and two others were charged with conspiracy in defrauding a hospital.  The proof the State offered differed from the manner of fraud alleged in the indictment.   The Supreme Court held that in that event the alleged conspiracy was not proved, and therefore the

variance was prejudicial to the defendant for purposes of R.C. 2941.26. In the present case, no conspiracy was alleged.

{¶ 32} The State's bill of particulars alleged that Defendant demanded both the motel's money from Furnas, as well as Furnas's wallet. In his appellate brief, Defendant argues that "Mr. Furnas never testified that his wallet or any other property of his was taken without consent." This is not true; as Defendant concedes elsewhere in his brief, Furnas testified that Defendant forced him to turn over his watch.

{¶ 33} In *State v. Brozich,* 108 Ohio St. 559, 141 N.E. 491 (1923), the Ohio Supreme Court held that in a prosecution for burglary and larceny, a variance in the identity of the stolen property did not prejudice the defendant. Similarly, we have held that in a prosecution for receiving stolen property, a bill of particulars alleging that the stolen property was the victim's wallet, when the evidence at trial indicated that the stolen property was photos removed from the wallet, was not a prejudicial variance. *State v. Channels,* 2d Dist. Greene App. No. 94-CA-15, 1994 WL 730149 (Dec. 30, 1994).

{¶ 34} We fail to see how, on the plain error standard of review, the variance between the information provided by the bill of particulars and the State's evidence at trial prejudiced Defendant concerning the identity of the personal property stolen from Furnas, which is not an element of the offense of aggravated robbery. That is particularly true where, as here, the Defendant also stole money. Notably, Defendant fails to provide us with any explanation of how this minor deviation prejudiced his defense.

{¶ 35} Defendant's third assignment of error is overruled.

{¶ 36} Defendant's Fourth Assignment of Error:

"THE VERDICT SHOULD BE REVERSED BECAUSE THERE IS INSUFFICIENT EVIDENCE TO WARRANT A CONVICTION, AND THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 37} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The proper test to apply to such an inquiry is the one set forth in paragraph two of the Syllabus of *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991):

{¶ 38} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light  most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶ 39} On the other hand, a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Hufnagle,* 2d Dist. Montgomery No. 15563, 1996 WL 501470 (Sept. 6, 1996). The proper test to apply to that inquiry is the one set forth in *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983):

> The court, reviewing the entire record, weighs the evidence and all
>
> reasonable inferences, considers the credibility of witnesses and
>
> determines whether in resolving conflicts in the evidence, the jury lost its

way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Accord*, *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).

{¶ 40} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). In *State v. Lawson,* 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997), we observed:

> Because the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

{¶ 41} Defendant was convicted of aggravated robbery, in violation of R.C. 2911.01(A)(1), which states: "No person in attempting or committing a theft offense, as defined in section 2913.01 of the revised code, * * * shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it." R.C. 2913.01(K)(1) offers one definition of theft as a violation of R.C. 2913.02. In turn, R.C. 2913.02(A) states that "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or

exert control over either the property or services in any of the following ways: (1) Without the consent of the owner * * *; (4) By threat; (5) By intimidation."

{¶ 42} Defendant argues that his aggravated robbery conviction was not supported by sufficient evidence because the State failed to prove that Furnas's watch was taken without his consent. His claim fails for two reasons. First, Defendant's argument ignores the theft of the motel's money, which is sufficient to support his aggravated robbery conviction. Furthermore, in considering the theft of Furnas's watch, lack of consent is but one way that the State may prove a theft offense.

{¶ 43} Furnas testified that Defendant entered the motel brandishing a gun. Defendant pointed that gun at Furnas and demanded both money and Furnas's watch. While there may have been no direct evidence that Furnas did not consent to Defendant demanding his watch at gunpoint, the evidence certainly supports an inference that Defendant obtained the watch by threat or intimidation. Circumstantial and direct evidence inherently possess the same probative value. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991). Therefore, the State's evidence was sufficient to warrant submitting the aggravated robbery charge to the jury.

{¶ 44} Defendant also argues that both of his convictions were against the manifest weight of the evidence because the State's witnesses were not credible. This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley,* 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 45} Furnas identified Defendant as the man who entered the Regency Inn, pointed a gun at him, and demanded money and his watch. Furnas also testified that Defendant forced him into the bathroom and tied him up. The State also offered testimony from Brady, McDufford, Spradlin, and several police officers. Even had the jurors found that some of the witnesses lacked credibility, we conclude that when all of the State's evidence is taken as a whole, the jury did not clearly lose its way in convicting Defendant of aggravated robbery and kidnaping.

{¶ 46} Defendant's fourth assignment of error is overruled.

{¶ 47} Defendant's Fifth Assignment of Error:

"THE VERDICT AGAINST APPELLANT SHOULD BE REVERSED BECAUSE HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL, AND WAS DENIED THE OPPORTUNITY TO REPRESENT HIMSELF, IN VIOLATION OF HIS RIGHTS UNDER THE DUE PROCESS CLAUSES OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION TEN OF THE OHIO CONSTITUTION, AS WELL AS APPELLANT'S RIGHT TO COUNSEL UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION."

{¶ 48} Counsel's performance will not be deemed ineffective unless that performance is proven to have fallen below an objective standard of reasonable representation and, in addition, prejudice to the defendant arises from counsel's performance. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In determining whether counsel's performance has fallen below an objective standard of reasonable representation,

"[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

{¶ 49} Hindsight may not be allowed to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook,* 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992). To show that a defendant has been prejudiced by counsel's deficient performance, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 50} Defendant insists that his trial counsel's performance at trial and the jury's rapid verdict indicate that counsel was ineffective. Defendant fails to offer any specific examples of counsel's allegedly deficient performance at trial. Moreover, contrary to Defendant's vague assertion, the record reveals that defense counsel appeared well-prepared for trial. For example, counsel thoroughly cross-examined the State's witnesses, and he made appropriate objections to various testimony and exhibits. Also contrary to Defendant's claim, trial counsel did have a theory of the case, which was that the police failed to do everything they could have in their investigation, particularly with regard to possible fingerprint and DNA evidence. The fact that the jury was quick to reach a verdict reflects less on defense counsel's performance than on the strength of the State's case.

**{¶ 51}** Defendant also argues that the trial court violated his right of self-representation when it overruled his motion to proceed *pro se*. The record does not demonstrate that Defendant made that request.

**{¶ 52}** On May 17, 2011, Defendant asked the court to remove his second appointed counsel because he had met with Defendant but once, and had not filed motions or made objections Defendant requested. However, Defendant did not ask to represent himself, and the court did not remove the counsel it had appointed.

**{¶ 53}** On the day of trial, May 25, 2011, Defendant again stated that he did not want his appointed counsel to represent him. (Tr. 9). However, though he gave his reasons for that request, Defendant did not invoke his right to represent himself. The court expressly found that "Mr. Moten has been advised of his right to represent himself under the Constitution and he's indicated to this court that he does not elect to do so." (Tr. 15).

**{¶ 54}** The record does not support Defendant's claim that the court violated his right of self-representation.

**{¶ 55}** Defendant's fifth assignment of error is overruled.

**{¶ 56}** Having overruled all five of Defendant's assignments of error, we will affirm Defendant's convictions.

Donovan, J., and Froelich, J., concur.


Copies mailed to:

Nathaniel R. Luken, Esq.
Anthony R. Cicero, Esq.
Hon. Michael A. Buckwalter