[Cite as *State v. Moten*, 2021-Ohio-233.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## GREENE COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : |  |
|  | : | Appellate Case Nos. 2020-CA-5 & |
| Plaintiff-Appellee | : | 2020-CA-23 |
|  | : |  |
| v. | : | Trial Court Case No. 2009-CR-818 |
|  | : |  |
| LAWRENCE MOTEN | : | (Criminal Appeal from |
|  | : | Common Pleas Court) |
| Defendant-Appellant | : |  |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 28th day of January, 2021.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Greene County Prosecutor's Office, Appellate Division, 61 Greene Street, Suite 200, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

LAWRENCE MOTEN, #A610-524, 1001 Olivesburg Road, P.O. Box 8107, Mansfield, Ohio 44901
      Defendant-Appellant, Pro Se

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Lawrence Moten, pro se, appeals from two judgments of the Greene County Court of Common Pleas related to his post-conviction requests for a new trial and for DNA testing of the gun involved in his conviction for aggravated robbery with a firearm specification. For the following reasons, the trial court's judgments will be affirmed.

## I. Procedural History

{¶ 2} The facts underlying Moten's conviction were detailed in his direct appeal, *State v. Moten*, 2d Dist. Greene No. 2011-CA-37, 2012-Ohio-6046. To summarize, in the early morning hours of December 11, 2009, Clayton Brady drove Moten to the Regency Inn Motel, where Moten pointed a gun at the night desk clerk and demanded money, which the clerk gave him. Moten then forced the clerk into a bathroom and tied his hands together. Brady, who had left Moten at the motel after seeing a police cruiser, was stopped by the police before he could return for Moten; the police located a Colt 380 handgun in Brady's vehicle.

{¶ 3} Soon after the motel robbery, Eli McDufford, who lived near the motel, called the police and reported that someone had broken into his apartment with a handgun. McDufford had fought the man and disarmed him. McDufford gave the handgun (a Stallard Arms Model JS 9mm pistol) and the perpetrator's cell phone, which were left at the apartment, to the police. After additional investigation, the police arrested Moten for both incidents.

{¶ 4} At a subsequent jury trial, the jury found Moten guilty of aggravated robbery, kidnapping, and accompanying firearm specifications related to the motel robbery. The trial court dismissed the aggravated burglary charge, pursuant to Crim.R. 29, at the close

of the State's case. In doing so, the trial court found that, while there was evidence that the cell phone recovered from McDufford's apartment belonged to Moten, there was no evidence that Moten had the phone on his person when McDufford struggled with the burglar. The court further stated that evidence of Moten's proximity to McDufford's apartment was insufficient to prove his presence in the apartment.[1] Finally, the court noted that the grand jury transcript reflected that Moten allegedly committed the burglary with the purpose of obstructing official business. (The bill of particulars stated that Moten tried to force his way into the apartment, telling the victim that he needed a place to hide.) The trial court concluded that Moten could not have committed the offense of obstructing official business in this manner, as a matter of law.

{¶ 5} The court subsequently merged the aggravated robbery and kidnapping offenses and imposed 10 years for aggravated robbery, plus an additional three years for the firearm specification; Moten also was ordered to pay restitution. The judgment entry included a provision that the firearm was to be forfeited to the Xenia Police Department to be disposed of by the agency according to law. We affirmed Moten's conviction on direct appeal. *Moten*, 2d Dist. Greene No. 2011-CA-37, 2012-Ohio-6046.

{¶ 6} Before and after his conviction, Moten filed motions relating to grand jury transcripts. In December 2010, before trial, the trial court granted Moten's motion for an in-camera inspection of grand jury transcripts. After conducting this review, the trial court denied Moten's request for those transcripts. The trial court again rejected Moten's

---

[1] In the subsequent discussion about whether the prosecutor could discuss the cell phone and firearm during closing argument, the prosecutor noted that Brady had identified the gun found in McDufford's apartment as belonging to Moten. The court commented that it "had forgotten that Mr. Brady had identified that." (Trial Tr. 526.) The State did not ask the court to reconsider its Crim.R. 29 ruling in light of that additional fact.

request for grand jury transcripts in 2013, after Moten's conviction.

{¶ 7} On October 18, 2019, Moten filed an application for DNA testing of the firearm, XPD Property Tag No. 49959 (the Stallard Arms firearm). Moten argued that the State had claimed that the firearm recovered from McDufford's apartment was the same gun used to commit the aggravated robbery of the motel, and that DNA testing could establish a different perpetrator. Moten attached numerous exhibits to his motion. We highlight the following documents:

- *June 9, 2010 letter from BCI to Detective Holly Clay.* The letter states that, during examination of the gun from the aggravated burglary (Stallard Arms 9mm pistol), "samples were collected for possible future DNA analysis. These samples have been sub-exhibited and will be returned to your agency with the other evidence. Should DNA analysis be necessary, please re-submit the sub-exhibited samples, as well as reference standards * * *." The letter further stated the opinion that the DNA analysis procedure would likely consume the entire DNA sample.

- *Search warrant for DNA sample from Moten*

- *Moten's July 18, 2010 motion for DNA expert and for order restraining the State from testing DNA samples until an expert can be retained*

- *August 2, 2010 letter from prosecutor to defense counsel.* The letter informed defense counsel that, according to BCI, an outside expert would not be permitted to observe the DNA testing procedures.

- *Defense motion for DNA testing to be performed by Miami Valley Regional Crime Lab*

- *Hearing transcript* in which trial court granted Moten's motion for a DNA expert and the parties agreed to check with MVRCL about allowing an expert to observe the DNA testing

- *March 17, 2014 request by Moten* for an inventory of biological evidence and to retain such evidence

- *May 19, 2014 letter from The Ohio Innocence Project to the Xenia Police Department*, requesting an inventory of any biological evidence that had been retained.

- *July 22, 2014 response by the prosecutor to The Ohio Innocence Project's inventory request.* The response listed the evidence that had been retained, including a firearm (Property Tag No. 49959).

{¶ 8} The trial court ordered the prosecutor's office to prepare a report outlined in R.C. 2953.75(A).

{¶ 9} On December 26, 2019, Moten filed another motion for grand jury transcripts. Moten indicated that he was seeking grand jury materials related to the firearm and cell phone recovered in the aggravated burglary and the legal instructions provided to the grand jury regarding aggravated burglary. Moten asserted that the indictment was based on false information and obtained in bad faith. In his motion, Moten also requested a new trial on Counts One and Two (aggravated robbery and kidnapping) without the physical evidence related to Count Three, the aggravated burglary.

{¶ 10} On January 16, 2020, the trial court overruled Moten's motion for grand jury transcripts and a new trial. The court denied the request for grand jury transcripts on the grounds that "this case is closed and appeals are complete," the trial court "has no current

jurisdiction in this case," and Moten had not demonstrated a particularized need for the transcripts. With respect to the motion for a new trial, the trial court noted that the motion was not based on newly discovered evidence, the basis for the motion was unclear, and the motion was untimely. Moten appeals the trial court's ruling. (Greene App. No. 2020-CA-5.)

{¶ 11} On January 30, 2020, Moten filed a motion in the trial court for the preparation of the transcript of proceedings to support his appeal. Moten listed 21 items that he believed should be included in the record on appeal, as well as the firearm (Property Tag No. 49959) and the cell phone. The State opposed the motion to the extent that Moten again sought to obtain grand jury testimony and asked for copies of the record to be sent to him directly. Moten subsequently filed a reply memorandum, arguing that his pending motion for DNA testing was a pending matter for which the grand jury testimony was relevant. He also raised a claim of retroactive misjoinder. The court later denied this motion.

{¶ 12} On February 28, 2020, Moten filed a motion in the trial court for correction or modification of the record, pursuant to App.R. 9(E). He asked for a transcript of grand jury voir dire testimony related to the aggravated burglary to be prepared and for a dismissal entry. The State responded that any information related to the aggravated burglary was moot, as that count was dismissed and that the grand jury voir dire was not subject to disclosure under the facts before it.

{¶ 13} We remanded the matter to the trial court so that it could address the motion to correct the record.

{¶ 14} On March 11, 2020, the State filed its inventory report, pursuant to R.C.

2953.75(A). The report indicated that "the firearm, property tag no. 49959, was disposed of pursuant to Xenia Police Department Guidelines on January 14, 2011 and is therefore not available for DNA testing." The report attached, as Exhibit A, a list by the Xenia Police Department of evidence that it purportedly still possessed.

{¶ 15} On April 20, 2020, the trial court overruled Moten's motion to correct the record and his application for post-conviction DNA testing. In denying the motion to correct the record, the trial court noted that Moten was required to raise any objections to the indictment prior to trial, and he had waived his objections pursuant to Crim.R. 12(H). The court further found that Moten's desired discovery into the instructions received by the grand jury as to Count Three (aggravated burglary) was moot because that count had been dismissed. Finally, the court noted that Moten had appealed his conviction and his conviction had been affirmed on direct appeal. The court concluded that the doctrine of res judicata barred Moten from raising an alleged trial error in a subsequent appeal.

{¶ 16} In denying the application for post-conviction DNA testing, the trial court reviewed the evidence at trial related to the aggravated robbery and kidnapping. The court concluded that DNA testing of the gun would not produce an exclusion result, as defined by R.C. 2953.71(G). The court explained:

* * * The firearm was recovered [from] McDufford's apartment, not the Regency Inn Motel. As noted above, the comparison sought must be between Moten's DNA [and] that of material recovered from the victim or the crime scene. Even assuming that Moten's request could meet the definition of "exclusion result" the Court finds that DNA testing of the firearm would not be outcome determinative in this case. Moten was identified as

the perpetrator of the robbery and kidnapping by both his co-conspirator, Clayton Brady[,] and the victim of the offense, [the motel clerk]. Assuming, arguendo, that a DNA profile belonging to someone other than Moten was on the firearm, that would merely prove that someone else touched the firearm at some point which is not, in and of itself, outcome determinative in this case. * * *

{¶ 17} Moten also appeals from the trial court's April 20, 2020 rulings. (Greene App. No. 2020-CA-23.) His notice of appeal did not specify the ruling to which his notice applied. However, the criminal docketing statement identified the probable issues for review to be whether the trial court erred in allowing the State to use evidence related to the aggravated burglary at trial, a matter raised in his motion for a new trial, and the court's denial of his post-conviction request for DNA testing. Moten has not raised any issues on appeal related to the grand jury transcripts.

{¶ 18} We have consolidated Moten's appeals.

{¶ 19} Moten raises two issues on appeal. (His appellate brief provides propositions of law, rather than assignments of error, as required by App.R. 16(A)(3).) First, he claims that the Xenia Police Department violated R.C. 2933.82 and his right to due process when it destroyed the firearm, Property Tag No. 49959. Second, he claims that "retroactive misjoinder" occurred and the trial court erred in failing to give a curative instruction after granting Moten's Crim.R. 29 motion on the aggravated burglary. We will address these claims in reverse order.

## II. Attachments to Moten's Appellate Brief

{¶ 20} As an initial matter, the State raises that Moten attached several documents

to his appellate brief. The State requests that we strike those attachments on the ground that they violate App.R. 16 and 19. The documents attached to Moten's appellate brief are copies of some of the documents that he attached to his October 18, 2019 motion for DNA testing of the firearm and documents otherwise in the record. Although Moten preferably should have referenced the documents in his brief rather than attached them, we decline to strike them.

### III. Retroactive Misjoinder

{¶ 21} Moten claims that he is entitled to a new trial due to retroactive misjoinder.

{¶ 22} Crim.R. 33 governs motions for new trial and sets forth the following six grounds for securing a new trial: (1) irregularity in the proceedings that deprived the defendant of a fair trial; (2) misconduct of the jury, prosecutor, or a state's witness; (3) accident or surprise that ordinary prudence would not have guarded against; (4) the verdict was not sustained by sufficient evidence; (5) legal error during trial; or (6) new evidence material to the defense has been discovered that could not have been discovered with reasonable diligence in time for trial. Crim.R. 33(A); *State v. Chinn*, 2d Dist. Montgomery No. 28345, 2020-Ohio-43, ¶ 11. Moten did not identify the ground upon which he relied.

{¶ 23} We review a trial court's denial of a Crim.R. 33 motion for a new trial for an abuse of discretion. *State v. Warren*, 2017-Ohio-853, 86 N.E.3d 728, ¶ 44 (2d Dist.). The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 24} Crim.R. 8 describes when multiple offenses may be charged together. It

provides that "[t]wo or more offenses may be charged in the same indictment, information or complaint in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct."

{¶ 25} "The law favors joinder to prevent successive trials, to minimize the possibility of incongruous results in successive trials before different juries, to conserve judicial resources, and to diminish the inconvenience to witnesses." *State v. Broadnax*, 2d Dist. Montgomery No. 21844, 2007-Ohio-6584, ¶ 33, citing *State v. Schaim*, 65 Ohio St.3d 51, 58, 600 N.E.2d 661 (1992) and *State v. Torres*, 66 Ohio St.2d 340, 343, 421 N.E.2d 1288 (1981).

{¶ 26} Even when charges are properly joined in a single indictment, Crim.R. 14 requires separate trials when the joinder of counts or defendants results in prejudice. *State v. McComb*, 2017-Ohio-4010, 91 N.E.3d 255, ¶ 48 (2d Dist.); *Broadnax* at ¶ 48. Specifically, Crim.R. 14 states, in part: "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

{¶ 27} Crim.R. 12(C)(5) requires a motion for severance to be filed before trial. If a motion for severance is not renewed at the close of the State's case or at the conclusion of the evidence, a defendant forfeits his ability to raise the issue on appeal and we review

the matter only for plain error. *E.g., McComb* at ¶ 51, citing *State v. Stargell*, 2016-Ohio-5653, 70 N.E.3d 1126, ¶ 12 (2d Dist.); *State v. Bates*, 2d Dist. Clark No. 2005-CA-83, 2006-Ohio-4146, ¶ 33.

{¶ 28} Retroactive misjoinder, also called spillover prejudice, "refers to circumstances in which the 'joinder of multiple counts was proper initially, but later developments -- such as a district court's dismissal of some counts for lack of evidence or an appellate court's reversal of less than all convictions -- render the initial joinder improper.' " *United States v. Hamilton*, 334 F.3d 170, 181 (2d Cir.2003), quoting *United States v. Jones*, 16 F.3d 487, 493 (2d Cir.1994). In analyzing a claim that prejudicial spillover warrants a new trial, some courts consider "(1) whether the evidence introduced in support of the vacated count was of such an inflammatory nature that it would have tended to incite or arouse the jury into convicting the defendant on the remaining counts, (2) whether the dismissed count and the remaining counts were similar, and (3) whether the government's evidence on the remaining counts was weak or strong." *State v. Love*, 1st Dist. Hamilton No. C-050131, 2006-Ohio-6158, ¶ 68, quoting *Hamilton* at 182.

{¶ 29} In the Second Circuit, a claim of retroactive misjoinder requires a showing of "compelling prejudice." *Jones* at 493. The Sixth Circuit has held that claims of prejudicial misjoinder require a showing of "compelling prejudice" or that the prosecutor acted in bad faith. *United States v. Deitz*, 577 F.3d 672, 692-693 (6th Cir.2009).

{¶ 30} In *Jones*, the defendant was found guilty after a second jury trial on charges of bank robbery, armed bank robbery, using a firearm in a crime of violence, and possessing a firearm as a convicted felon. The firearm possession charge was added after the first jury failed to reach on verdict on the other three charges. The addition of

the firearm possession charge resulted in the government's presentation of evidence that Jones was a convicted felon. Prior to the second trial, Jones had sought severance of the firearm possession charge, but the trial court denied the motion.

{¶ 31} On appeal, the appellate court reversed Jones's conviction for possessing a firearm as a convicted felon on sufficiency grounds. Jones argued on appeal that his convictions on the other counts should also be reversed, because they were tainted by "retroactive misjoinder." Jones asserted that the "spillover effect" of the evidence regarding his criminal record, which was presented for the possessing a firearm as a convicted felon charge, substantially prejudiced him.

{¶ 32} The Second Circuit agreed. The appellate court found that Jones suffered prejudice from the admission of his criminal record and there was "an overwhelming probability" that the jurors did not adhere to the court's limiting instructions regarding the use of that evidence. *Id.* at 493. The court thus held that, having vacated the firearm possession count, Jones was entitled to a new trial on the other counts "because, in retrospect, the jury should never have heard evidence on the vacated count." *Id.* The Second Circuit summarized: "In short, the evidence that Jones is a felon was of the inflammatory sort that may have swayed the jury to convict him of the other charges even if the evidence had not supported those charges." *Id.*

{¶ 33} In this case, the State submits that we do not need to address Moten's retroactive misjoinder argument, because no Ohio court has recognized a claim of retroactive misjoinder. *See Love*, 1st Dist. Hamilton No. C-050131, 2006-Ohio-6158, at ¶ 68 ("Here, we note that no Ohio court has recognized retroactive misjoinder and we decline to do so now."). Moten has not directed us to any Ohio cases on retroactive

misjoinder. Nevertheless, assuming, for sake of argument, that a viable claim of retroactive misjoinder exists in Ohio, the record does not establish that Moten is entitled to a new trial based on prejudicial misjoinder, or spillover prejudice.

{¶ 34} First, we note that Moten filed a motion to sever the trial on Count Three (aggravated burglary) prior to trial. Unlike in *Jones,* where the possession of a firearm as a convicted felon charge was reversed on appeal, Moten's aggravated burglary charge was dismissed by the trial court on a Crim.R. 29 motion. Accordingly, Moten had an opportunity to raise misjoinder at trial or to request a limiting instruction about the State's evidence on the aggravated burglary charge**.** Moten filed a motion for a new trial on June 14, 2011, shortly after his conviction, and he raised the trial court's failure to sever Count Three, among other claims. Moten did not appeal the denial of that motion. Moreover, Moten had an opportunity raise retroactive misjoinder on direct appeal, but did not. Accordingly, Moten's argument is barred by res judicata.

{¶ 35} Second, even if we were to consider the merits of Moten's argument, the record does not support his claim that he suffered "compelling prejudice" from the joinder of the aggravated burglary charge with the aggravated robbery and kidnapping charges. It is not enough to show that one of the charged offenses was dismissed or reversed due to insufficient evidence. To hold otherwise would require a new trial in virtually every case where any part of a conviction was reversed on sufficiency of the evidence grounds. *See Howard v. Wilson,* N.D.Ohio No. 1:07-CV-3240, 2008 WL 4837563, *5 (Oct. 8, 2008).

{¶ 36} Here, the State presented evidence of two events that occurred in different locations on the same night. The conduct underlying the aggravated robbery and kidnapping at the motel were distinct from the conduct underlying to the incident at

McDufford's apartment. We find no basis to conclude that the jury could not adequately separate the charges. In addition, the evidence regarding the aggravated burglary was not inflammatory such that it created a likelihood that the jury convicted Moten based on inflammatory evidence related to the aggravated burglary.

{¶ 37} Moreover, even without the charge of aggravated burglary, the State could have properly presented evidence that the gun used in the commission of the aggravated robbery was located in McDufford's apartment, along with Moten's cell phone. McDufford's apartment was approximately a block away from the Regency Inn Motel, and Brady identified the gun collected from McDufford's apartment as the gun that Moten had when Brady dropped him off before the robbery. We cannot conclude that the State's use of evidence from the aggravated burglary, particularly the firearm, was inappropriate even after the trial court's grant of Moten's Crim.R. 29 motion on the aggravated burglary. In addition, based on the evidence presented at trial, we cannot conclude that the State's joinder of the aggravated burglary charge in the indictment was unreasonable or based on bad faith.

{¶ 38} The trial court did not abuse its discretion in denying Moten's motion for a new trial.

### IV. DNA Testing of the Firearm

{¶ 39} On appeal, Moten does not specifically argue that the trial court erred in denying his application for post-conviction DNA testing. Rather, he focuses on the State's report that the Stallard Arms firearm was destroyed in 2011, and he claims that the State violated Ohio law and his constitutional rights by destroying that firearm. We will address Moten's arguments in the context of a review of the trial court's denial of his

application for post-conviction DNA testing of the firearm.

{¶ 40} If an eligible offender submits an application for DNA testing under R.C. 2953.73, the trial court must require the prosecuting attorney to use "reasonable diligence" to determine (1) whether biological material was collected from the crime scene or victim against which a sample from the offender may be compared and (2) whether the parent sample of that biological material still exists. R.C. 2953.75(A); *State v. Bonnell*, 155 Ohio St.3d 176, 2018-Ohio-4069, 119 N.E.3d 1285, ¶ 18. In using reasonable diligence to make those determinations, the prosecuting attorney must rely on "all relevant sources," including but not limited to (1) all prosecuting authorities involved in the case, (2) all law enforcement involved in the investigation, (3) all custodial agencies involved at any time with the biological material, (4) the custodians of the custodial agencies, (5) all crime laboratories involved at any time with the biological material, and (6) all other "reasonable sources." *Id*. The prosecuting attorney must prepare and file a report containing the required determinations. R.C. 2953.75(B).

{¶ 41} A court may accept an R.C. 2953.73 application for DNA testing only if it determines that all six of the conditions in R.C. 2953.74(C) apply. The conditions include: (1) biological material was collected from "the crime scene or the victim" and that the parent sample still exists, (2) there is sufficient parent material to extract a test sample, (3) the identity of the perpetrator was at issue at trial, (4) one or more of the defense theories asserted by the offender at the trial stage was of such a nature that, if DNA testing were conducted and an exclusion result were obtained, the exclusion result would be outcome determinative, (5) "if DNA testing is conducted and an exclusion result is obtained, the exclusion result would be outcome determinative regarding that offender,"

and (6) the parent sample and the extracted test sample are the same sample as collected and that there is no reason to believe that they have been out of state custody or have been tampered with or contaminated since they were collected.   R.C. 2953.74(C).

{¶ 42} Moten focuses on the State's apparent destruction of the firearm located at McDufford's apartment, which contained the alleged parent DNA sample.   In this case, the relevant sequence of events relative to that firearm appears to be:

| Date | Event |
|---|---|
| June 2010 | The Stallard Arms firearm was sent to BCI, which extracted DNA from the gun; the DNA samples were "sub-exhibited" and returned to the Xenia Police Department |
| June 2010 to late May 2011 | No DNA testing was performed prior to trial |
| May 25-27, 2011 | Jury trial |
| June 8, 2011 | Judgment of conviction; judgment forfeits gun to Xenia Police Department and permits disposal of the gun |
| March & May 2014 | Defense requests an inventory of biological evidence |
| July 22, 2014 | Prosecutor responds with list of retained evidence, including the Stallard Arms firearm |
| Oct 18, 2019 | Moten files application for DNA testing of gun |
| Mar. 11, 2020 | State provides R.C. 2953.75(A) report indicating that the firearm (Property Tag No. 49959) was disposed of by the Xenia Police Department on Jan. 14, 2011 |

{¶ 43} Moten argues that the State's assertion that the police department disposed of the gun at issue (Property Tag No. 49959) on January 14, 2011 is patently false.   The record supports Moten's contention that the State's report is inaccurate.

{¶ 44} Exhibit A to the State's March 11, 2020 report states that it is a list of evidence that the Xenia Police Department still has in regard to Case No. 2009-34352 (the Xenia Police Department's internal case number for the robbery).   Exhibit A indicates that a *Colt 380* firearm was destroyed on January 14, 2011.   The evidence at

Moten's trial established that the Colt 380 was located in the car that Brady was driving when the Regency Inn Motel was robbed. Patrol Sergeant Christian Stutes testified that he went as a back-up officer to the traffic stop of Brady's vehicle and took possession of the Colt 380. Stutes stated that he "booked" the firearm into evidence, but inadvertently marked the property tag for "destroy." Detective Darrin Barlow, the property room manager for the Xenia Police Department, testified that the Colt 380 semiautomatic firearm was submitted to the police department's property room, but was "destroyed." (Trial Tr. 263.) Barlow explained that "destroy" is a "generic [term] for the evidence room," and in this case, the Colt 380 was actually sold to the gun dealer to whom the police department sells its usable guns. (*Id.* at 263-265.) Brady pled guilty to carrying a concealed weapon regarding that firearm.

{¶ 45} The June 2010 BCI letter and the property tags for the cell phone and gun collected from McDufford's apartment show that the aggravated burglary was assigned a separate internal case number, 2009-34353. (*See* exhibit to Moten's Application for DNA testing.) Property Tag No. 49959 describes the firearm collected from McDufford's apartment as a "9mm pistol Model JS, Serial #058497, Stallard Arms." The State presented this firearm at trial as State's Exhibit 5. Brady testified that Moten had a gun when he got out of Brady's car on December 11, 2009; Brady identified State's Exhibit 5, as "the gun used in the robbery." (Trial Tr. at 130.)

{¶ 46} Exhibit A to the prosecutor's March 2020 inventory report does not address the current status of the Stallard Arms JS 9mm firearm. However, it is clear that the State was incorrect in its inventory report when it stated that the Property Tag No. 49959 was destroyed on January 14, 2011.

{¶ 47} On this record, we cannot determine whether the Stallard Arms firearm was otherwise destroyed or, instead, has not been located. (We note that the State's March 11, 2020 report also does not account for the sub-exhibited DNA samples from the gun that were extracted by BCI in 2010. BCI firearm expert Heather Williams testified at trial that the sealed envelopes with DNA swabs were taped to the gun box.) Accordingly, for purposes of R.C. 2953.74(C), it is unclear whether a parent sample exists, whether a sufficient test sample can be extracted, and whether the chain of custody has been maintained. We also cannot evaluate whether the State violated Moten's due process rights by destroying the firearm, as Moten argues on appeal.

{¶ 48} Moten argues that the purported destruction of the Stallard Arms firearm also violated R.C. 2933.82. R.C. 2933.82 imposes a duty on a "governmental evidence-retention entity" to secure biological evidence for certain homicide and sex offenses. *See* R.C. 2933.82(B)(1); *see State v. Bullitt*, 8th Dist. Cuyahoga No. 103798, 2016-Ohio-4868, ¶ 8. The obligations in R.C. 2933.82 do not apply to Moten's aggravated robbery and kidnapping charges. Thus, even assuming that the firearm were destroyed, the State did not violate R.C. 2933.82 in this case.

{¶ 49} In denying Moten's application for DNA testing, the trial court did not rely upon the absence of the firearm. Rather, it concluded that, because the firearm was recovered from McDufford's apartment rather than the "crime scene" (i.e., the motel), the first condition of R.C. 2953.74(C) was not met. The trial court further found that DNA testing of the firearm would not be outcome determinative. *See* R.C. 2953.74(C)(5). The court emphasized that Moten was identified as the perpetrator of the robbery and kidnapping by both his co-conspirator, Brady, and the victim of the offense. The court

concluded that a DNA profile belonging to someone other than Moten would "merely prove that someone else touched the firearm at some point which is not, in and of itself, outcome determinative in this case."

{¶ 50} We find no error in the trial court's determination that an exclusion result would not be outcome determinative. "Outcome determinative" means that, "had the results of DNA testing of the subject offender been presented at the trial of the subject offender requesting DNA testing and been found relevant and admissible" with respect to the offense for which the offender was convicted and is requesting the DNA testing, and had those results been analyzed in the context of and upon consideration of all available admissible evidence related to the offender's case, "there is a strong probability that no reasonable factfinder would have found the offender guilty of that offense." R.C. 2953.71(L).

{¶ 51} The evidence at trial indicated that an aggravated robbery and kidnapping occurred around 1:55 a.m. on December 11, 2009, at the Regency Inn Motel. The motel's night clerk, James Furnas, testified that a man entered the motel, showed Furnas a gun, and told Furnas that he wanted money. The robber tied up Furnas during the robbery. The robber left the motel around 2:05 a.m. and Furnas called the police soon thereafter.

{¶ 52} Furnas testified that the robber was wearing a jacket with a hood and the hood was up, but the man was not wearing a mask and Furnas saw the robber's face. Furnas was able to provide a description of the robber to the police, and Furnas identified Moten as the perpetrator at trial; Furnas was "reasonably certain" of his identification. (Trial Tr. at 76.)

{¶ 53} Brady testified at trial that he and Moten were friends, and the two men had been staying together at the Harmony Motel since the beginning of December 2009. Brady acknowledged that he was involved in the robbery of the Regency Inn Motel as the getaway driver. Brady described his vehicle as a white 2003 Chevy Impala. Brady stated that he dropped off Moten at the CVS next to the Regency Inn Motel, that Moten had a gun when he got out of the car, and that Brady was aware that Moten was going to rob the motel. Brady testified that Moten was wearing a North Face apparel hooded jacket and was dressed in all black. Brady drove off and intended to return for Moten, but was stopped by the police before he could return.

{¶ 54} Officer Charles Sanso observed Brady's white Chevy Impala as Brady drove into the CVS parking lot next to the Regency Inn Motel. Sanso testified that the Impala had a driver and a passenger, and the officer saw the passenger get out and walk toward the Regency Inn Motel. Sanso followed the Impala when it left the CVS parking lot. Officer Sanso stopped following the vehicle when Brady went to a McDonald's, but several minutes later, the officer searched for and stopped the Impala when he heard a dispatch regarding the motel robbery.

{¶ 55} McDufford testified that, at approximately 2:15 a.m., a man came to his apartment door, said something about needing a place to hide, and pointed a gun at him. McDufford testified that he "reached out and grabbed it [the gun] and pointed it away." (Trial Tr. at 192.) McDufford stated that the man wedged himself in the doorway, so McDufford pulled him inside the apartment. After a struggle, McDufford was able to disarm the man and told him to get out. McDufford ejected the man from his apartment.

{¶ 56} Officer William Stotts responded to McDufford's apartment and took

possession of the gun, a Stallard Arms 9mm handgun. Stotts testified that McDufford handed the gun to him; neither he nor McDufford was wearing gloves. (Trial Tr. at 220.) Stotts further stated that he was bare-handed when he made the gun inoperable. (*Id.* at 222.) McDufford also found a cell phone where he and the man had struggled. Another officer responded and took possession of the cell phone. At trial, Brady identified the gun found in McDufford's apartment (State's Exhibit 5) as the 9mm firearm that Moten had. Detective Holly Clay, lead detective, testified that no DNA testing was performed on the gun.

{¶ 57} Carolyn Spradlin, manager of the Harmony Motel, testified that she saw a television news report that showed the photo of a man staying at the hotel. Spradlin went to the man's room and asked if he was Moten; Moten responded affirmatively. Spradlin testified that Moten had another man staying as a guest in the room; the registration card indicated that the occupants had a white Impala. After Moten vacated the room, Spradlin contacted the police. Detective Holly Clay responded to the motel and collected items belonging to Moten and Brady.

{¶ 58} Through cross-examination, defense counsel challenged the credibility of Brady and other State's witnesses. Defense counsel emphasized that Brady had received a reduced sentence in exchange for his cooperation, that the night clerk's identification was made 17 months after the offense, and that law enforcement made several mistakes during the course of the criminal proceeding. Those mistakes included the inadvertent sale of the Colt 380 and the fact that Detective Clay signed sworn statements that contained falsehoods, which she admitted at trial.

{¶ 59} Upon review of the record as a whole, however, we conclude that the State

presented a strong case that Moten was the perpetrator of the Regency Inn Motel robbery. The night clerk identified Moten as the person who robbed the motel and tied him up. Brady testified that he dropped off Moten by the motel and was to be the getaway driver for the aggravated robbery committed by Moten. Although Brady told several falsehoods to Detective Clay upon his initial arrest, Brady's testimony at trial was corroborated in large part by the testimony of other witnesses.

{¶ 60} As to the Stallard Arms JS 9mm, the evidence at trial reflected that several individuals touched the gun on the day of the robbery, including Moten, McDufford, and Officer Stotts. Brady had been staying with Moten at the Harmony Inn since early December 2009. The trial court reasonably concluded that, even if the DNA sample were found to belong to a person other than Moten, the result would merely indicate that another person had touched the gun. Upon consideration of all available admissible evidence related to the aggravated robbery and kidnapping charges, an exclusion result from DNA analysis of the Stallard Arms firearm would not exonerate Moten of the aggravated robbery and kidnapping. In short, we cannot conclude that "there is a strong probability that no reasonable factfinder would have found the offender guilty" of the aggravated robbery and kidnapping had DNA testing been conducted and Moten excluded as a contributor to the DNA.

{¶ 61} The trial court properly denied Moten's application for post-conviction DNA testing of the Stallard Arms JS 9mm firearm.

### V. Conclusion

{¶ 62} The trial court's judgments will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and HALL, J., concur.


Copies sent to:

Marcy A. Vonderwell
Lawrence Moten
Hon. Stephen Wolaver